IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| THE ESTATE OF LLOYD JACK TRANTHAM, JR., by and through its Administrator Shelia Trantham, ) ) ) ) | |
| Plaintiff, ) | |
| v. ) | 1:15CV726 |
| SSC LEXINGTON OPERATING COMPANY, LLC, a North Carolina Limited Liability Company, d/b/a Brian Center Nursing Care/Lexington; ) ) ) ) ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Plaintiff, the Estate of Lloyd Jack Trantham, Jr., by and through its administrator, Shelia Trantham ("Plaintiff") commenced this action by filing a Complaint in the General Court of Justice, Superior Court Division, Davidson County, North Carolina, against Defendants Living Centers - Southeast, Inc., SSC Lexington Operating Company, LLC, a North Carolina Limited Liability Company, doing business as Brian Center Nursing Care/Lexington, and Mariner Health Central, Inc. (collectively "original Defendants"). The original Defendants removed the action to federal court on September 2, 2015, based on diversity jurisdiction. (Notice of Removal (Doc. 1).) On September 30,

2015, Plaintiff filed notices of voluntary dismissal as to Living Centers – Southeast (Doc. 15) and Mariner Health Central (Doc. 16). Per a September 30, 2015 Stipulation (Doc. 17), SSC Lexington Operating Company, LLC, doing business as Brian Center Nursing Care/Lexington ("Defendant") is the only remaining defendant in this suit.

Presently before this court is Defendant's Motion to Compel Arbitration and Stay Proceedings. (Def.'s Mot. to Compel Arbitration and Stay Proceedings ("Mot. to Compel") (Doc. 2).) Plaintiff has not responded to the motion, the time for response has run, and the matter is ripe for ruling.[1] This court has carefully considered the motion and supporting documentation. For the reasons stated fully below, this court will grant the motion.

I. **BACKGROUND**

As asserted by Defendant, this case involves medical care and treatment provided to Lloyd Jack Trantham, Jr., at a nursing home operated by Defendant. (See Def.'s Mem. in Supp. of Mot. to

---

[1] Pursuant to Local Rule 7.3(c)(1), "[m]otions shall be considered and decided . . . without hearing or oral argument, unless otherwise ordered by the Court." LR 7.3(c)(1). Furthermore, if no response is filed, "the motion will be considered and decided as an uncontested motion." LR 7.3(k). Nevertheless, this court has reviewed and considered Defendant's motion independently, notably with respect to the contract, attached as Exhibit A to the motion. (Mot. to Compel, Ex. A (Doc. 2-1).)

Compel Arbitration and Stay Proceedings ("Def.'s Mem.") (Doc. 3) at 1.)[2] Plaintiff filed the present action to recover damages from Defendant, alleging vicarious liability for common law and medical negligence committed by Defendant's employees while caring for Lloyd Jack Trantham, Jr. (See Complaint ("Compl.") (Doc. 8) ¶ 11.) Defendant moves this court to compel arbitration and stay proceedings based on a Dispute Resolution Program between the parties that includes an arbitration provision. (See Def.'s Mot. (Doc. 2) at 1-2; Def.'s Mem. (Doc. 3) at 1-2.)

**II. ANALYSIS**

    **A.    Enforceability of the Arbitration Agreement**

Fourth Circuit case law dictates:

> a litigant can compel arbitration under the FAA if he can demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute."

Adkins v. Labor Ready, Inc., 303 F.3d 496, 500-01 (4th Cir.

---

[2] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

-3-

Case 1:15-cv-00726-WO-JEP Document 19 Filed 01/20/16 Page 3 of 12

2002) (quoting Whiteside v. Teltech Corp., 940 F.2d 99, 102 (4th Cir. 1991)).[3]

As to the first requirement, Plaintiff filed suit alleging negligence by Defendant and corresponding damages. Defendant's answer, (Doc. 4), denying the allegations and seeking to require arbitration, demonstrates its dispute as to that claim. Thus, the first requirement is satisfied.

As to the second requirement, the issue of whether an arbitration agreement exists between the parties is generally a question of state contract law. See First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995); Adkins, 303 F.3d at 501 ("Whether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation."). "Section 2 of the FAA provides that arbitration agreements 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" Muriithi v. Shuttle Exp., Inc., 712 F.3d 173, 178-79 (4th Cir. 2013) (citing 9 U.S.C. § 2). "We apply ordinary state law

---

[3] Because "the FAA alone does not supply jurisdiction to the Court, . . . 'there must be diversity of citizenship or some other independent basis for federal jurisdiction before the order [compelling arbitration] can issue.'" Nat'l Home Ins. Co. v. Bridges, Misc. Action No. 6:15-00112-MGL, 2015 WL 6688117, at *3 (D.S.C. Oct. 30, 2015) (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 n.32 (1983)). The case at hand was removed to this court on the basis of § 1332 diversity jurisdiction. (See generally Notice of Removal (Doc. 1).)

principles governing the formation of contracts, including principles concerning the 'validity, revocability, or enforceability of contracts generally.' We also apply the federal substantive law of arbitrability, which governs all arbitration agreements compassed by the FAA." Id. (citations omitted). "Although federal law governs the arbitrability of disputes, ordinary state-law principles resolve issues regarding the formation of contracts." Am. Gen. Life & Acc. Ins. Co. v. Wood, 429 F.3d 83, 87 (4th Cir. 2005) (citations omitted).[4] In considering these principles,

> [s]pecifically, "courts should remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds for the revocation of any contract." For instance, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2."

Id. (citations omitted).

---

[4] In determining which state's contract law applies, this court must apply North Carolina's conflict of laws analysis. See Eli Research, Inc. v. United Commc'ns Group, LLC, 312 F. Supp. 2d 748, 754 (M.D.N.C. 2004). "For a contract claim, the governing law is determined by lex loci contractus, or the law of the place where the contract was formed." Id. (citing Fortune Ins. Co. v. Owens, 352 N.C. 424, 428, 526 S.E.2d 463, 466 (2000)). And, "[t]he place where a contract is formed is determined by the 'place at which the last act was done by either of the parties essential to a meeting of the minds.' " Id. (citing Key Motorsports, Inc. v. Speedvision Network, LLC, 40 F. Supp. 2d 344, 347 (M.D.N.C. 1999)).

-5-

Like the federal government, see Muriithi, 712 F.3d at 179, North Carolina has a strong public policy favoring arbitration and, where there is any doubt concerning the existence of an arbitration agreement, it should be resolved in favor of arbitration. Martin v. Vance, 133 N.C. App. 116, 120, 514 S.E.2d 306, 309 (1999); see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983) ("[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration."). Further, North Carolina law makes it clear that "[w]here each party agrees to be bound by an arbitration agreement, there is sufficient consideration to uphold the agreement." Martin, 133 N.C. App. at 122, 514 S.E.2d at 310 (citing Johnson v. Circuit City Stores, 148 F.3d 373, 378 (4th Cir. 1998)).

In the case at hand, there is no allegation or indication of fraud, unbalanced economic power, or duress. In fact, the agreement itself provides that "[w]e will not refuse to admit, attempt to discharge the resident or take any other adverse action against the resident based on a revocation of the opportunity to participate in DRP [the dispute resolution program]." (Mot. to Compel, Ex. A (Doc. 2-1) at 3.) The terms appear to show mutual consideration, providing the same terms for both parties, (id. at 5 ("If a party to this Agreement has a disagreement with the other party . . . .")), and also

determining that "[u]nder DRP, the Facility will pay for ninety percent (90%) of the fees for mediation and arbitration and you will pay for the remaining ten percent (10%). Each party shall be responsible for their own attorneys' fees." (Id. at 6.) Additionally, the signed agreement shows a meeting of the minds in that it clearly states, in multiple places and in conspicuous typeface, that the parties voluntarily agree to waive their rights to the courts and agreed to have the dispute resolved through an arbitration process. (See generally id.) Further, under North Carolina law, because both parties agreed to be bound by the provision, the agreement is supported by sufficient consideration. Thus the agreement exists.[5]

As to the second part of the second element - whether the agreement includes an arbitration provision that purportedly covers the dispute - the requirement is also satisfied. The

---

[5] As to applicable law, the agreement provides that

> [T]he Federal Arbitration Act ("FAA"), not state law, will control and applies to the arbitration of disagreements between the parties and the parties agree to incorporate such laws into this Agreement. This Agreement will otherwise be governed by the State law where the Facility is located. This shall include local court rules governing discovery, and state law governing state medical liability act(s), if applicable. If it is determined that the FAA does not apply to arbitration under this Agreement, the parties agree to resolve any disagreement through arbitration under control of state law.

(Mot. to Compel, Ex. A (Doc. 2-1) at 7.)

-7-

agreement states that "[b]y agreeing to participate[,] all disagreements must be resolved through the dispute resolution program." (Id. at 4.) Covered parties under the agreement include "all family members who would have a right to bring a claim in state court on behalf of the resident or the resident's estate . . . or any other person that may have a cause of action arising out of or relating in any way to the resident's stay at the facility." (Id.) Dispute is defined to include "any claim or dispute totaling $50,000.00 individually or in the aggregate that would constitute a cause of action that either party could bring in a court of law . . . ." (Id.) The term "any claim or dispute . . . that either party could bring in a court of law" is very broad and may be construed to include the claims at issue here. However, the provision stating that the agreement applies to claims "totaling $50,000.00 individually or in the aggregate," (id.), is explicit and very narrow. Such language would not, on its face, appear to apply here, as the parties seem to agree for jurisdictional purposes that the claims are in excess of $75,000.00. (See Notice of Removal (Doc. 1).) It is possible, however, that this phrase is ambiguous and can be construed by reference to other parts of the contract. See, e.g., State v. Philip Morris USA Inc., 363 N.C. 623, 631-32, 685 S.E.2d 85, 90-91 (2009)("'Interpreting a contract requires the court to examine the language of the contract itself for

-8-

indications of the parties' intent . . . . Intent is derived not from a particular contractual term but from the contract as a whole. . . .' However, we are also mindful that in reviewing the entire agreement, our task is not 'to find discord in differing clauses, but to harmonize all clauses if possible.'" (citations omitted)). Because the agreement explicitly does not apply to a claim or dispute of an amount less than $50,000.00, (see Mot. to Compel, Ex. A (Doc. 2-1) at 4-5), the agreement may be construed to apply to claims totaling $50,000.00 or more. In the absence of any response or objection from Plaintiff, this court will find that the agreement applies to the claims at issue here.

The third requirement requires that the transaction have a relationship to interstate or foreign commerce, evidenced by the agreement. "[T]he reach of the [FAA] statute is broad. . . . The Supreme Court has interpreted this provision as exercising the full scope of Congress's commerce-clause power." Rota-McLarty v. Santander Consumer USA, Inc., 700 F.3d 690, 697 (4th Cir. 2012) (citations omitted). While diversity of citizenship alone is not enough to classify a transaction, see id., factors such as the fact that "the FAA does not impose a burden upon the party invoking the FAA to put forth specific evidence proving the interstate nature of the transaction," and the fact that "in deciding to apply the FAA, [a court] need not identify any specific effect upon interstate commerce, so long as 'in the

-9-

Case 1:15-cv-00726-WO-JEP   Document 19   Filed 01/20/16   Page 9 of 12

aggregate the economic activity in question would represent "a general practice . . . subject to federal control,"'" id. at 697-98, also support the interstate nature of the transaction in this case. The agreement itself also states that "DRP and the nature and extent of our business activities substantially affects, relates, and involves the purchase of substantial quantities of goods and services that are produced outside of the state and shipped across state lines to the Facility, which is referred to as interstate commerce." (Mot. to Compel, Ex. A (Doc. 2-1) at 7.) In the absence of a response or objection from Plaintiff, this court accepts the representations of interstate commerce set forth in the agreement. Further, but not dispositive, the agreement is between a Delaware entity and a North Carolina individual. In concert, these factors show that the third requirement is satisfied.

Finally, Plaintiff has refused to arbitrate the dispute. This is clear as Plaintiff has not engaged in the process for mediation and arbitration set forth in the agreement, (see generally id.), and has instead filed suit. Thus, the four elements for compelling arbitration under the FAA have been met in this case and this court will grant Defendant's motion to compel arbitration.

### B. Stay Pending Arbitration

The FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, <u>shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement</u>, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added). The Fourth Circuit has held that "[t]his stay-of-litigation provision is mandatory. A district court therefore has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview." Adkins v. Labor Ready, Inc., 303 F.3d 496, 500 (4th Cir. 2002) (citations omitted).

Consequently, this court will also grant Defendant's motion with respect to the request for a stay.

### III. CONCLUSION

For the reasons set forth herein, **IT IS HEREBY ORDERED** that Defendant's Motion to Compel Arbitration and Stay Proceedings (Doc. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that this action is **STAYED** until arbitration has been had in accordance with the terms of the dispute resolution agreement.

-11-

The Clerk shall mark the case as inactive. Within 30 days of completion of the arbitration, the parties shall file a joint report advising the court of completion of the arbitration and whether further proceedings in this court are required.

This the 20th day of January, 2016.

/s/ William L. Osteen, Jr.
_____
United States District Judge